IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HECTOR COSTA DEL MORAL, et al. <br> Plaintiffs <br> <br> v. <br> <br> SERVICIOS LEGALES DE PUERTO RICO, et al. <br> <br> Defendants | Civil No. 96-1872(SEC) <br> ADEA |

**OPINION AND ORDER**

Pending before the Court is a motion for summary judgment filed by defendants Servicios Legales de Puerto Rico, Inc. ("Servicios Legales"), Gretchen Coll Marti ("Coll Marti") and Angel Melendez Osorio ("Melendez Osorio")**(Docket # 21)**. Upon careful examination of the relevant facts, the applicable law and the parties' arguments, defendants' motion is **GRANTED** and plaintiffs' complaint is **DISMISSED**.

**Factual Background**

Plaintiff Hector A. Costa del Moral ("Costa"), a sixty-one year old attorney, claims that defendants Servicios Legales, Coll Marti and Melendez Osorio denied his employment application to work at Servicios Legales due to his age and political affiliations, as a sympathizer of the Popular Democratic Party ("PPD").

On approximately March of 1995, plaintiff Costa sought employment at Servicios Legales as an attorney. Costa sent Melendez Osorio, the hiring director, a resume for his consideration. Plaintiff alleges that although he complied with all the requirements made by Melendez Osorio, neither Melendez Osorio nor any other representative of Servicios Legales called him for an interview or informed him why his job application had not been processed. On late March of 1995

**Civil No. 96-1872(SEC)**                                                                 2

Melendez Osorio contacted Costa and told him that due to a reduction in federal funding there were no job vacancies and thus were precluded from hiring more attorneys.

Costa claims that despite this "budget constraint" disclaimer, Servicios Legales continued advertising for and hiring attorneys, and cites the hiring of Vivian Torres Garau and Alvin Rivera, which received and accepted employment offers from defendants on April 20, 1995 and June 13, 1995, respectively, a few months after Melendez Osorio had denied plaintiff's job application for a similar legal position. Costa notes that after he filed a complaint before the Anti-Discrimination Unit of the Puerto Rico Labor Department, defendants granted Costa a "pro forma" interview to "create the impression that it was considering plaintiff for employment as an attorney." (Docket #31, Pretrial Report, Plaintiff's Theory of the Case, p. 5) The day after the interview defendants informed him by letter that he failed to qualify for the job as an attorney.

Pursuant to these incidents, Costa filed the present complaint, under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §621, 42 U.S.C. §1983, Law 100 of Puerto Rico, and for political discrimination under 29 L.P.R.A. §136 and §146, as well as Article 1802 of the Puerto Rico Civil Code.

### Summary Judgment Standard

The First Circuit has recently noted that:

> [s]ummary judgment has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources.

McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). According to Fed.R.Civ.P.

AO 72A
(Rev 8/82)

56(c), summary judgment should issue whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also NASCO, Inc. v. Public Storage, Inc., 29 F. 3d 28 (1st Cir. 1994). It is not enough to conjure up an alleged factual dispute between the parties; to defeat summary judgment, there must exist a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

For a dispute to be "genuine", there must be sufficient evidence for a reasonable trier of facts to resolve the issue in favor of the non-moving party. U.S. v. One Parcel of Real Property, 960 F.2d. 200, 204 (1st Cir. 1992). See also, Boston Athletic Assn. v. Sullivan, 867 F.d. 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994).

In determining whether to grant a summary judgment, the Court may not, however, weigh the evidence. Casas Office Machines, Inc. v. Mota Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994) Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. citing Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.d. 932, 936 (1st Cir. 1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

**Applicable Law- ADEA**

In ADEA cases, once a defendant files a motion for summary judgment, the issue before the

Court turns "'not [on] whether [the plaintiff] was in fact fired because of his age, which remains to be determined at trial, but [on] whether [the question of whether he] was fired because of his age, is genuinely contestable'." Maldonado-Maldonado v. Pantasia Mfg. Corp., 956 F.Supp. 73 (D.P.R. 1997), quoting Shager v. Upjohn Co., 913 F.2d 398, 403 (7th Cir. 1990). Given the foregoing, we must examine the facts, as presented by the parties, to determine whether there is any genuine issue of material fact involved.

The Age Discrimination in Employment Act ("ADEA") provides that "it shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. §623(a)(1). The First Circuit has established that plaintiffs in ADEA discrimination lawsuits "bear the ultimate burden of proving that their ages were the determinative factor in their discharge, 'that is, that [they] would not have been fired but for [their] age.'" Pages-Cahue v. Iberia Líneas Aéreas de España, 82 F.3d 533, 536 (1st Cir. 1996), citing LeBlanc v. Great American Insurance, 6 F.3d 836, 841 (1st Cir. 1993). In some cases, plaintiff will have enough direct or "smoking gun" evidence to establish such discrimination without more. Most likely, however, plaintiff will possess little overt evidence of discrimination, and will have to rely on the much utilized burden-shifting standard enunciated in McDonnell Douglas v. Green, 93 S.Ct. 1817, 1824-26 (1973). Pages-Cahue, 82 F.3d at 536. See also Serrano-Cruz v. DFI Puerto Rico, 109 F.3d 23 (1st Cir. 1997).

**Plaintiff Costa del Moral fails to Establish Prima Facie Case**

Under the standard first set forth in McDonnell Douglas, and later adapted to cases filed under the ADEA, plaintiff may establish a *prima facie* case by showing "(1) that he or she fell within the ADEA's protected age group --that is, more than forty years of age; (2) that he or she met [the employer's] legitimate performance expectations; (3) that he or she experienced [an] adverse

**Civil No. 96-1872(SEC)**                                                                                          5

employment action; and (4) that [the employer] did not treat age neutrally or retained younger persons in the same position." Pages-Cahue, 82 F.3d at 536.

The First Circuit has established that evidence of an employee's long history at the employer's business, and his or her rise from a low-level to a managerial position, are sufficient to support an inference that the employee's job performance was adequate to meet an employer's needs, even when the evidence did not extend all the way to the time of his discharge. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). Moreover, as to the fourth requirement, the United States Supreme Court has recently established that a plaintiff does not have to be replaced by someone outside of the protected class in order to make a prima facie case of discrimination. "The fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out because of his age. O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307, 1310 (1996). Since the ADEA "prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than the fact that the plaintiff was replaced by someone outside the protected class." Id.

In the present case, it is undisputed that plaintiff fell squarely within the protected age group at the time of the allegedly adverse action against him, when he was 59 years old. Plaintiff's prima facie case begins to falter on the second prong. Although he applied for the Legal Services position, there is doubt about his qualifications for the job. Although he had over twenty-seven years of experience in Puerto Rico, with no physical or mental handicaps and no criminal record or record of moral turpitude, defendants contend that the Interviewing committee gave him a sub-par rating of 3.58, well below the minimum score of 4.00 to recommend his employment. (Docket #21,

**Civil No. 96-1872(SEC)**                                                                                              6

Statement of Material Facts, ¶ 10)

Plaintiff clears the third prong without objection, since defendants clearly denied him a position as staff attorney with their institution. Finally, plaintiff has made a colorable claim that two younger but similarly situated and similarly qualified attorneys, Vivian Torres Garau and Alvin Rivera received and accepted employment offers from defendants on April 20, 1995 and June 13, 1995, a few months after defendant Angel Melendez Osorio had denied plaintiff's job application for a similar position, citing budget constraints.

Although defendants have proffered evidence to refute plaintiff's allegations on the second and fourth prong, courts have generally interpreted this prima facie showing quite liberally in plaintiff's favor, and thus, granting all reasonable inferences to plaintiff Costa, we hold that his allegations establish a prima facie case. Once a plaintiff satisfies this prima facie requirement, he establishes a presumption that his employer violated the ADEA. Mulero-Rodríguez, 98 F.3d at 673. This is, however, a rebuttable presumption, and the "burden of persuasion, as opposed to the burden of production," will lie on plaintiff all throughout the proceedings. Serrano-Cruz, 109 F.3d at 26.

It is not altogether difficult for defendants in the present case to rebut the preceding presumption. To do so, they need only to "articulate a legitimate nondiscriminatory reason for the employee's termination." LeBlanc, 6 F.3d at 842. Once the employer complies with this requirement, "the McDonnell Douglas presumption 'drops out of the picture'." Id., quoting St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). See also Pages-Cahue, 82 F.3d at 536. The fact that the presumption "drops out of the picture" means that plaintiff Costa once again has the burden of demonstrating that the defendants' allegedly legitimate reason to deny him employment was only a pretext, and that their decision was actually motivated by a discriminatory animus namely

**Civil No. 96-1872(SEC)**                                                                              7

his age and his political affiliation as a member of the Popular Democratic Party. Pages-Cahue, 82 F.3d at 536. See also Maldonado-Maldonado, 956 F.Supp. at 77.

To prevail at this *post-prima facie* stage, a plaintiff must proffer sufficient direct or circumstantial evidence to lead a reasonable fact finder to conclude that the employer's decision was motivated by age animus. Pages-Cahue, 82 F.3d at 537. This is not always an easy task. Thus, in Pages-Cahue, the Court rejected plaintiffs' arguments that anti-age animus could be inferred from the fact that the employees were not offered alternative employment opportunities; it held that such a finding would require the court to encroach too far into areas which should be left to the company's legitimate management. Id. at 538.

The determination of what constitutes enough evidence of pretext and/or discriminatory animus is generally made on a case-by-case basis. Yet most courts seem to agree that, at least in the absence of "smoking gun" evidence, more than one vague instance of discrimination is required. In Mulero-Rodríguez, 98 F.3d at 674, for instance, the First Circuit reversed a district court's finding that plaintiff's evidence merely reflected differences of opinion between plaintiff and defendant and, reading all inferences in plaintiff's favor, found that the record offered sufficient evidence of discriminatory animus.

The Mulero-Rodriguez case, however, differs markedly from the present scenario, for in that case, plaintiff proffered scathing incriminating admissions by defendant that clearly suggested his discriminatory animus, such as the employer's comments toward plaintiff that "he was too old to handle the salespeople," and that plaintiff was going to be relieved of his supervisory duties over the sales force. Although the First Circuit agreed that standing alone, that statement was too remote to be linked with the decision to terminate plaintiff, it concluded that plaintiff had succeeded in creating

**Civil No. 96-1872(SEC)**                                                                                                              8

a nexus between that statement and the decision to terminate him. In doing so, the Court made reference to Conway v. Electro Switch Corp., 825 F.2d 593, 597-98 (1st Cir. 1987), where the First Circuit held that "an employer's willingness to consider impermissible factors such as ... age ... while engaging in one set of presumably neutral employment decisions ... might tend to support an inference that such impermissible considerations may have entered into another area of ostensibly neutral employment decisions --here, an employee's termination." Mulero-Rodríguez, 98 F.3d at 676.

Similarly, in Maldonado-Maldonado, 956 F.Supp. at 77, plaintiff furnished the Court with a number of affidavits sworn by present and former employees which uniformly indicated that plaintiff's boss had stated on various occasions that he was planning to "get rid of older employees to create a new team consonant with his ways." Id. at 79. Plaintiff also provided evidence that defendant had provided inconsistent explanations for his discharge. The district court thus decided that, given these facts, a reasonable jury could find that defendant's stated reason for dismissing plaintiff was pretextual, and that a discriminatory animus did exist.

In Irizarry v. Fortuño, 1997 WL 266981 (S.D.N.Y. 1997), however, the district court stated that the fact that the defendant was known as "the Terminator" in his last job and regarded his mission as the "rejuvenation" and "reinvigoration" of the agency was insufficient in and of itself to infer a discriminatory animus. "Such isolated and ambiguous remarks", it held, "are simply insufficient to establish an inference of age discrimination." Id., citing Beers v. NYNEX Material Enterprises Co., 1992 U.S.Dist. LEXIS 240, at *9 (S.D.N.Y. 1992).

In the end, ADEA cases are usually decided on the basis of whether the plaintiff manages to comply with the standard for defeating summary judgment. As the Irizarry case suggests, courts will

**Civil No. 96-1872(SEC)** 9

most probably not accept mere "gauzy generalities, unsupported conclusions, subjective characterizations and problematic suppositions" as a foundation to an opposition for summary judgment. The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). A plaintiff will be required to provide "specific instances of unlawful discrimination." Id. Herein is where Costa has met his Waterloo.[1]

Defendants contend that they denied Costa's petition for employment due to the poor rating which the Interviewing Committee gave him after his interview. The 3.58 rating, as previously noted, was well below the minimum score of 4.00 to recommend his employment as staff attorney for the Legal Services Office.[2] This rating was not colored by any discriminatory animus, but rather arrived based on the following objective criteria: a) nature and scope of previous legal experience b) grade

---

[1] Refers to a village in central Belgium, south of Brussels, where England's Duke of Wellington decisively defeated Napoleon on June 18, 1815. The phrase 'met his Waterloo' is often used to refer to a decisive or crushing defeat. To continue the martial analogy, Winston Churchill noted in his first address as England's Prime Minister in the midst of the Second World War that "[t]he [Allied] armies must give up the idea of fighting behind concrete lines and natural obstacles [referring to the Maginot Line, a thousand-mile barricade across the French-German border], and must realize that mastery can only be regained through furious and unrelenting assault." Winston Churchill, First Radio Address as Prime Minister (London, England, May 19, 1940), *Great Speeches of the 20th Century* (Rhino Records, 1991). Similarly, plaintiff Costa may not prevail in this case by hiding behind the procedural cloak of Fed.R.Civ.P. 56(c), and uttering the talismanic incantation "there are disputed issues of material fact" which prevent summary judgment against him. In the absence of clear facts or allegations which establish a controversy regarding defendants' discriminatory animus, or evidence which clearly suggests that defendants' pretexts are a "sham," plaintiff's discrimination claims must fail.

[2] The Court expresses its concern about defendants' thirteenth-hour retroactive interview, granted only after plaintiff filed his complaint before the Puerto Rico Anti-Discrimination Unit within the Labor Department. Such interview smacks of a "subsequent remedial measure" (see Fed.R.Evid. 407) to appease plaintiff Costa, and the "sub-par rating" conveniently served as a legitimate pretext after Costa had filed the present complaint. Even if we accepted plaintiff's contention that the interview and the subsequent "low rating" of Costa was a "sham" designed merely as a subterfuge for another reason, there is no evidence from which we can infer that the real reason to deny Costa's petition was motivated by plaintiff's age or political tendencies. Indeed, even dismissing the "pro forma" interview and low rating, Costa has failed to provide any evidence which would create a genuine material dispute about defendants' initial reason to deny his job petition, namely the budget constraints provoked by decreased federal funding.

**Civil No. 96-1872(SEC)** 10

point average and college preparation, c) knowledge and comprehension of the needs and legal problems of the indigent persons and an engaging attitude with their solution and d) previous work experience with indigent groups or communities and other programs for the poor. (Docket #21, Statement of Material Facts, ¶ 11).

Defendants also argue that they offered staff positions to attorneys Vivian Torres Garau and Alvin Rivera because they were much better qualified than Costa and because both Garau and Rivera had priority over Costa in the available positions. Ms. Garau, an attorney for Servicios Legales who was working at the defendants' Humacao center, applied for a similar position in Guayama on February 24, 1995. On April 20, 1995, defendant Melendez Osorio notified Ms. Garau that her transfer from Humacao to Guayama had been approved, pursuant to a collective bargaining agreement between Servicios Legales and the Attorneys' Union of Servicios Legales. (Statement of Material Facts, ¶ 7, Appendix, Exhibit 2, Sworn Statement of Angel Melendez Osorio, ¶ 8). Similarly, Rivera, a former employee of Servicios Legales, was notified and thus applied for an attorney position that had been budgeted prior to the funding crisis of 1995, and for which Rivera had applied on January 27, 1994, well before plaintiff Costa. (Id., Statement of Material Facts, ¶ 8, Appendix, Exhibit 3, ¶ 5). Plaintiff fails to rebut these valid explanations that undermine Costas' claims that defendants employment actions were motivated by age or politics.

Plaintiff also alleges that Melendez Osorio refused to employ him at Servicios Legales on account of Costa's political preferences while they both worked at the Puerto Rico Department of Education, Costa as an attorney and Melendez Osorio as personnel manager in charge of hiring. Notwithstanding this historical coincidence, plaintiff admitted under oath that he never informed Melendez Osorio of his political affiliation while they were working for the Department of

Education, and that Melendez Osorio never discriminated against him due to his political association with the Popular Democratic Party. (Docket #21, Statement of Material Facts, ¶ 12)

Plaintiff's reference to a previous lawsuit is also misleading, since Melendez Osorio was not a part and was never implicated in any acts of political discrimination during his stint at the Education Department. Id., Statement of Material Facts, ¶ 13. We caution plaintiff Costa against such spurious strategy of insinuating, without corroborating evidence that Melendez Osorio had been accused of political discrimination in a prior lawsuit.

Plaintiff's allegations of political discrimination, feeble as they may be, pale in comparison to Costa's attempt to turn Servicios Legales' denial of his job application into a ¶ 1983 claim for civil rights violation, separate from his ADEA claim.

Title 42 U.S.C. ¶ 1983 reads:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court in West v. Atkins, 487 U.S. 42, 48 (1988) explained that in order to pursue a §1983 claim, plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States. Additionally, plaintiff must show that the alleged deprivation was committed under color of law, that is, that at the time the defendant perpetrated the violation, defendant was a "state actor." As noted by Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982), "[t]his may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."

**Civil No. 96-1872(SEC)**                                                                                                              12

Each of these elements is crucial. However, the quintessential element is the "state action" requirement. The Supreme Court in <u>Lugar</u>, *supra*, emphasized the importance of this factor: " [a]s a matter of substantive constitutional law the state action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments,' (citation omitted.)" Id. at 936.  The Court added in <u>Lugar</u>:

> [C]areful adherence to the "state action" requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.  It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.  A major consequences is to require the courts to respect the limits of their own power as directed against state governments and private interests.  Whether this is good or bad policy, it is a fundamental fact of our political order.

Id. at 936-937.

In the present case, it is undisputed that Servicios Legales is a private non-profit corporation organized under the laws of Puerto Rico to provide free legal assistance to individuals meeting eligibility guidelines. (Statement of Material Facts 2)  It receives funds from the government of Puerto Rico and from the Legal Services Corporation, a non-profit corporation established by the federal government to provide legal assistance in civil matters to persons financially unable to afford such assistance. 42 U.S.C. 2996(b). We find that defendants' contentions are unopposed by defendant and unimpeachable in their logic. The issue has been unequivocally adjudicated in this district court <u>Lopez-Gerena</u> v. <u>Puerto Rico Legal Services, Inc.</u>, 538 F.Supp. 754 (D. Puerto Rico), and upon appeal, affirmed by the First Circuit Court of Appeals, 697 F.2d 447 (1st Cir. 1983).

Plaintiff's jurisdictional invocation of 42 U.S.C. §1983 in this case is so clearly unwarranted by law that the Court must consider whether this misrepresentation merits sanctions pursuant to Rule 11. The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation and streamline the

AO 72A
(Rev.8/82)

**Civil No. 96-1872(SEC)** 13

litigation process by lessening frivolous claims or defenses. Cruz v. Savage, 896 F.2d 626 (1st Cir. 1990) Pursuant to Rule 11, attorneys must make reasonable inquiry to assure that the claims, defenses and positions represented by them are well grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay. Fed.R.Civ.P. 11

Accordingly, attorneys must conduct themselves professionally and "consistent with the orderly functioning of the judicial system." Figueroa Rodriguez v. Lopez Rivera, 878 F.2d 1488, 1491 (1st Cir.1988). Notwithstanding these admonitions, courts should use their sanctioning power with restraint. Courts should avoid using the wisdom of hindsight and instead evaluate an attorney's conduct based upon what was reasonable at the time the attorney acted. Fed.R.Civ.P. 11, advisory notes. Furthermore, the Court should not impose sanctions too eagerly, lest it "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Id.

Although a review of the case law and the facts convince the Court that attorney Costa did not properly research the jurisdictional underpinnings of his complaint, in light of our dismissal of his complaint on the merits, we decline to impose sanctions pursuant to Rule 11. In this case, we will heed the bard's admonition and sweet refrain:

> The quality of mercy is not strained,
> it droppeth as the gentle rain from heaven
> Upon the place beneath: it is twice blessed;
> It blesseth him that gives and him that takes.
> William Shakespeare, The Merchant of Venice, 1596.

**Supplemental Jurisdiction Claims**

It is hornbook law that district courts have discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. See, 28 U.S.C. §1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

**Civil No. 96-1872(SEC)**                                                                                          14

Nevertheless, where, as here, the existing federal claims warrants dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

Some courts have stated that the holding in Gibbs "seems clearly to require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." See, e.g., Snowden v. Millinocket Regional Hosp. 727 F. Supp. 701, 709 (D. Me. 1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit". Newman v. Burgin, 930 F. 2d 955, 963 (1st Cir. 1991). See also Vera-Lozano v. International Broadcasting, 50 F.3d 67 (1st Cir. 1995).

Although district courts are not obligated to dismiss pendent state law claims, in the usual case in which the federal-law claim is dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 5 (1988); citing Gibbs 383 U.S. at 726-727; see Mercado-García v. Ponce Federal Bank, 979 F.2d 890, 896 (1st Cir. 1992); Rivera v. Murphy, 979 F. 2d 259, 264 (1st Cir. 1992); Figueroa Ruiz v. Alegría, 896 F. 2d 646 (1st Cir. 1990). Cf. Vega v Kodak Caribbean, 3 F. 3d 476, 478 (1st Cir. 1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"). Upon review of the facts before us, the applicable law and the equities of the present case, we decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

In conclusion, we find that plaintiff Costa has failed to produce one iota of evidence beyond

**Civil No. 96-1872(SEC)**                                                                                         15

his collage of "conclusory allegations, improbable inferences, and unsupported speculation," Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) that are insufficient "to block summary judgment" against him. J. Geils Band Employee Benefit Plan v. Smith Barney Inc., 76 F.3d 1245, 1251 (1st Cir. 1996).

In view of the above discussion, plaintiff Costa's federal claims under ADEA and §1983, are **DISMISSED WITH PREJUDICE**. Plaintiffs' state claims pursuant to Law 100 of Puerto Rico, political discrimination under 29 L.P.R.A. §136 and §146, as well as Article 1802 of the Puerto Rico Civil Code are **DISMISSED WITHOUT PREJUDICE**. Accordingly, defendants' motion for summary judgment (**Docket #21**) is hereby **GRANTED** and the present complaint is **DISMISSED**. Judgment shall issue accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this  31st  day of August, 1999.

SALVADOR E. CASELLAS
United States District Judge

AO 72A
(Rev.8/82)